1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

UNIVERSAL LIFE CHURCH OF
SNOHOMISH COUNTY, a nonprofit
corporation;  DONALD WINDER, and
ELIZABETH JOHNSTON, individually and as
officers of Universal Life Church,

12

13

Plaintiffs,

14

v.

15

GMAC MORTGAGE CORPORATION; JP
MORGAN CHASE BANK CORPORATION;
and SELECT PORTFOLIO SERVICING, INC.,
f/k/a FAIRBANKS CAPITAL CORPORATION;

16

17

18

Defendants.

19

CASE NO. C06-651RSM

ORDER ON DEFENDANT SELECT
PORTFOLIO SERVICING'S MOTION
FOR SUMMARY JUDGMENT

20

21

        This matter is before the Court for consideration of a motion for summary judgment filed by

22

defendant Select Portfolio Servicing, Inc., ("SPS").  Dkt. # 17.  Plaintiffs have opposed the motion, and

23

the matter has been fully briefed.  For the reasons set forth below, defendant's motion shall be granted.

24

BACKGROUND

25

        The following facts appear in the declarations and exhibits, and are not in dispute.  In 1998, Gina

26

Bakeng, who is not a party to this action, entered into a loan agreement secured by a deed of trust on

27

28

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

residential property in Everett, Washington.  The loan was initially serviced by Equicredit Corporation.
On September 28, 2001, Ms. Bakeng entered into an agreement with the Universal Life Church of
Snohomish County ("ULC") by which ULC would make all future payments on the mortgage, as well as
pay real estate taxes for the second half of 2001. Dkt. # 21, Exhibit A. The agreement was signed by
Donald Winder on behalf of ULC.   The same day, Ms. Bakeng executed a quitclaim deed, conveying a
fifty percent interest in the property to ULC.  *Id*.   The quitclaim deed bears marks indicating that it was
recorded on October 2, 2001.  Mr. Winder contacted Equicredit to confirm that there would be no
problems with ULC making the mortgage payments, and to advise Equicredit of ULC's mailing address.

On December 20, 2001, servicing of the loan was transferred from Equicredit to Fairbanks Capital
Corporation, now known as SPS.  ULC was notified by mail of the transfer.  Mr. Winder contacted SPS
to confirm that there would be no problem with ULC making the mortgage payments.   Mr. Winder states
in his declaration that the SPS representative suggested that he assume the loan individually because SPS
would not extend credit to a church.  Declaration of Donald Winder, p. 2.  Mr. Winder declined to
assume the loan as an individual, but asked that he be listed as a "co-borrower" on the loan.  He sent a
written request to be added as a "co-borrower" on February 8, 2003.  Dkt. # 21, Exhibit B.  ULC never
received a written response to this request, and the loan documents were never amended.  Ms. Bakeng
remained the sole obligor on the loan.   However, ULC's payments were accepted and were applied to
the loan.

On June 2, 2003, servicing of the loan was transferred again, this time to defendant GMAC
Mortgage Corporation ("GMACM").  SPS sent notice of the transfer to Gina Bakeng, the borrower of
record on the loan, as required by law.  SPS did not send notice to ULC or to Donald Winder.  Ms.
Bakeng did not inform ULC of the transfer, and ULC continued to make loan payments to SPS.   For
several months, SPS forwarded these payments to GMACM.   However, SPS did not forward the
November, 2003 payment to GMACM; instead, it returned the check to the borrower of record, Ms.
Bakeng.  Ms. Bakeng apparently did not notify ULC that she received this check; Mr. Winder states in
his declaration that he did not learn the fate of the November 2003 check until the filing of this motion.

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

1   Declaration of Donald Winder, ¶ 9.  However, at some point he became aware of the problem because he

2   contacted SPS, and was told at that time that the loan had been transferred to GMACM.  *Id*.  ULC then

3   began sending payments to GMACM.

4         Mr. Winder does not state in his declaration that there was any problem with the December, 2003

5   payment.  However, GMACM returned the payments for January, February, and March, 2004 to ULC

6   because the amounts were not sufficient to make the account current.  *Id., ¶* 10.  ULC sent a replacement

7   check to GMACM in the amount of $4320.00 for the missing three payments, but GMACM claimed the

8   check was never received.[1]   GMACM sent a Notice of Default to ULC and to Gina Bakeng, followed by

9   a Notice of Foreclosure and Notice of Trustee's Sale, also sent to ULC as well as Ms. Bakeng.  ULC did

10  not act to prevent the foreclosure and sale, and the property was sold in December, 2004.

11        In March, 2005, plaintiff ULC filed suit against GMACM and JP Morgan Chase Bank in

12  Snohomish County Superior Court.   Thirteen months later, an amended complaint was filed, with

13  Donald Winder and Elizabeth Johnson as additional plaintiffs, and Fairbanks Capital Corporation named

14  as an additional defendant.  Fairbanks, now known as Select Portfolio Services timely removed the case

15  to this Court on the basis of the parties' diversity, pursuant to 28 U.S.C. § 1332.   SPS then moved for

16  summary judgment of dismissal as to the two claims asserted against it, namely negligence and "acting in

17  concert".

18                                       DISCUSSION

19        Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and

20  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

21  material fact and that the moving party is entitled to judgment as a matter of law."  F.R.Civ. P. 56(c).

22

23      [1]Although not relevant to the present motion, the following facts are helpful in understanding the
    subsequent events.  According to exhibits provided by plaintiffs, the $4320.00 check was mistakenly sent
24  by GMACM to a different customer, Latartas McKee of Coweta County, Georgia.  Declaration of
    Donald Winder, Exhibit D.  The local prosecuting attorney investigated the basis for a charge of first
25  degree forgery against Mr. McKee.  *Id*.  Eventually it was determined that Mr. McKee had sent a check
    in a similar amount to GMACM at the same time, and for some reason GMACM sent ULC's check to
26  Mr. McKee.  Mr. McKee's negotiation of the ULC check was the result of confusion or mistake, rather
    than criminal intent.  *Id*.

27

28   ORDER ON MOTION FOR SUMMARY
    JUDGMENT - 3

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Id*. at 249-50.   It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter.  *Id*.  Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.

Plaintiffs claim that SPS acted negligently in transferring the loan account to GMACM because it did not notify ULC of the transfer, and because it mishandled the mortgage payments it received from ULC.  Amended Complaint, ¶ 24.  Then, after setting forth nine separate tort claims against co-defendants GMACM and JP Morgan Chase Bank, plaintiffs assert a claim of "acting in concert" against SPS, alleging that SPS is jointly and severally liable with GMACM and JP Morgan Chase for all of plaintiffs' injuries.  Amended Complaint, ¶ 44.  However, "acting in concert" is not itself a tort, but rather a vehicle for joint liability under R.C.W. 4.22.070(1)(a).  Therefore, only the negligence claims will be addressed.

In moving for summary judgment on the tort claims, SPS first asserts that plaintiff waived all claims relating to the foreclosure and trustee's sale by failing to timely object or bring a lawsuit to restrain the sale.  The argument arises from Washington's Deed of Trust Act, RCW 61.24 ("Act").  This Act sets forth the procedure and notice requirements for non-judicial foreclosure and a trustee's sale.  The required notice states, in section IX:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an
> opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

pursuant to RCW 61.24.130.  **Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.**

R.C.W. 61.24.040(f) (emphasis added).   It is undisputed that ULC received this notice, and that it contained the required language.  Declaration of Mark Bailey, Exhibit B.

The courts have found that the waiver language of the Deed of Trust Act is broad, and applies both to challenges to the pre-foreclosure process, and to the underlying obligation.  *Hallas v. Ameriquest Mortgage Co.*, 406 F. Supp. 2d 1176, 1181 (D. Or. 2005) (interpreting the Washington Act). Nevertheless, plaintiffs argue that the waiver provision of the Deed of Trust Act should not apply to their tort claims.  They have, however, provided no legal authority for this argument.   The Court shall therefore look to Washington cases which address the purpose of the Deed of Trust Act.

The Washington Supreme Court has recently reiterated the three goals of the Washington Deed of Trust Act: (1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles.  *Plein v. Lackey*, 149 Wash. 2d 214, 225 (2003) (*citing Cox v. Helenius* 103 Wash. 2d 383, 387 (1985) and *Country Express Stores, Inc., v. Sims*, 87 Wash. App. 741, 747-48 (1997).  The Act includes a specific procedure for halting trustee's sale so that an action contesting the default can proceed.  *Id*.  The failure to take advantage of the pre-sale remedies under the Act may result in a waiver of the right to object to the sale.  *Id*. at 227.

The Washington Supreme Court noted that the Washington State Court of Appeals has found waiver in a number of cases involving a failure to enjoin a trustee's sale.

> Specifically, that court has held that waiver of **any postsale contest** occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.

*Id*. at 228 (emphasis added); *citing Country Express Stores*, 87 Wash. App. at 749-751; *Steward v. Good*, 51 Wash. App. 509, 515-17 (1988); *Koegel v. Prudential Mutual Savings Bank*, 51 Wash. App. 108, 114 (1971).   The application of the waiver doctrine in this context serves all three goals of the Deed of Trust Act.  *Id*.  To allow one to delay in asserting a defense until after the sale "would be to defeat the

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 5

1  spirit and intent of the trust deed act." *Id., quoting Country Express Stores,* 87 Wash. App. at 752.

2       Plaintiffs in this action seek monetary damages for the alleged improper foreclosure sale of the

3  home, including reimbursement for the market value of the home.  Amended Complaint, p. 13.  This is

4  precisely the type of relief that is barred by the waiver doctrine.   As discussed above, all three

5  requirements for application of the waiver doctrine—notice, knowledge of a defense, and failure to

6  act—have been met.  While plaintiffs assert that their failure to file suit to restrain the sale arose from a

7  lack of financial resources and their inability to retain counsel, this is not an excuse acknowledged in the

8  waiver doctrine.  Declaration of Donald Winder, ¶ 4.   Further, plaintiffs have not demonstrated why they

9  could not have filed *pro se*, as indeed they did in originally filing this lawsuit.[2]

10       As plaintiffs failed to invoke the remedies provided in the Deed of Trust Act, they shall not now

11  be allowed to circumvent the purposes of the Act by couching their claims in tort language.  The Court

12  thus finds no basis for excepting plaintiff's tort claims against SPS from the waiver provision of the Deed

13  of Trust Act.

14       Plaintiffs also assert that the Snohomish County Superior Court ruled that their tort claims were

15  not waived in this case, and that the ruling is now res judicata and not amenable to relitigation.  However,

16  as defendant correctly notes, SPS was not a party to the case at the time of that ruling, and plaintiffs'

17  claims against SPS were not included in that ruling.  The relitigation rule does not apply, because

18  "[c]entral to the concepts of res judicata and collateral estoppel is the principle that only parties to a prior

19  action and parties in privity with [such] parties are barred from relitigating claims or issues in a

20  subsequent action."   *Sandpiper Village Condominiums Association v. Louisiana-Pacific*, 428 F. 3d

21  831, 848 n. 24 (9th Cir. 2005) *citing Tahoe-Sierra Pres. Council, Inc., v. Tahoe Regional Planning*

22  *Agency*, 322 F. 3d 1064, 1081 (9th Cir. 2003).

23       Even if the Court were to find that the waiver doctrine did not apply, plaintiffs' negligence claims

24  against SPS would be found meritless.  A negligence action requires that the plaintiffs demonstrate (1) a

25
26      [2]Although the original state court complaint was filed *pro se*, the amended complaint was filed in state court by counsel.  Plaintiffs remain represented by counsel in these proceedings, as ULC, a nonprofit corporation, must be under the rules of this Court.  Local Rule GR 2(g)(4)(b).

27
28   ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

duty of care was owed them by the defendant; (2) there was a breach of that duty; (3) that breach was the cause of their harm; and (4) they suffered damages as a result. *Zabka v. Bank of America Corp*, 131 Wash. App. 167, 171 (2005).  Here, plaintiffs have failed to demonstrate any duty of care owed them by SPS.  The private agreement between Ms. Bakeng, the borrower, and ULC was not binding upon the lender, and did not create any contractual or other relationship between ULC and SPS from which a duty of care might arise.   The lender's duty of care was only to the borrower of record, not to any third party who was gratuitously making payments. *Id.* at 172.  As SPS had no duty of care toward plaintiffs, the negligence claims necessarily fail.

In opposing summary judgment, plaintiffs assert that there are three "primary" issues of fact in dispute.  First, they contend there is an issue of fact as to "what SPS did with the November 2003 mortgage check".  Plaintiffs' Response, p. 4.  However, this is not a fact in dispute; plaintiffs themselves admit knowing at this point that SPS returned the November 2003 check to Gina Bakeng.  Second, plaintiffs contend there is a factual dispute as to why "SPS process[ed] the November 2003 check differently than it did all of the other checks received from ULC." *Id.*   This is not a question of fact but of motive.  The fact that SPS did handle the November 2003 check differently is not in dispute.  As SPS has explained, it had no obligation to forward ULC's payments to GMACM once the mortgage was transferred.  By forwarding the payments to GMACM for the first few months after the transfer, SPS incurred no obligation to continue to do so.  Instead, the mis-directed check was returned to Ms. Bakeng, the borrower of record.   Any issues arising from Ms. Bakeng's failure to inform ULC of this return are not relevant to plaintiffs' claims against SPS.  Finally, plaintiffs contend there is an issue of fact as to "why SPS did not follow through with its suggestion and the request made by ULC and Gina Bakeng to make ULC a co-borrower on the mortgage loan." *Id.*   Again, this is not a question of fact but of motive. The facts themselves are not in dispute :  the church (ULC) could not be made an obligor on the loan, and Mr. Winder declined to personally assume the obligation.  Declaration of Donald Winder, ¶ 5.   Without any assumption by Mr. Winder of the financial obligation, and amendment of the loan documents to reflect that, the term "co-borrower" is meaningless.  The question regarding SPS's failure to designate

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

1   ULC as a "co-borrower" is therefore not a material factual issue to defeat summary judgment.

2

3                                       CONCLUSION

4          The pleadings, declarations, and exhibits on file show that there is no genuine issue as to any

5   material fact.  The Court has determined that on the basis of these undisputed facts, defendant SPS is

6   entitled to judgment as a matter of law.  Accordingly, defendant's motion for summary judgment (Dkt. #

7   17) is GRANTED, and the claims against defendant SPS are DISMISSED.

8          Dated this 20th day of April, 2007.

9

10

11                                              RICARDO S. MARTINEZ
                                                UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
     ORDER ON MOTION FOR SUMMARY
28   JUDGMENT - 8